# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE NORTHERN DIVISION, AT KNOXVILLE

| | |
|---|---|
| SHELIA PURKEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. |
| ) | |
| JEFFERSON COUNTY SCHOOLS, ) | |
| ) | **JURY DEMANDED** |
| Defendant. ) | |
| ) | |

## COMPLAINT

Comes now the Plaintiff, Shelia Purkey, and for her Complaint against Defendant Jefferson County Schools would state as follows:

### PARTIES, JURISDICTION, AND VENUE

1. This case arises under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. section 4-21-401 *et seq.*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. section 206 *et seq.*, the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. section 50-1-304, and Tennessee common law.

2. The Court has subject matter jurisdiction pursuant to the ADEA, 29 U.S.C. section 626(b), and the FLSA, 29 U.S.C section 216(b). It has supplemental jurisdiction over Plaintiff's state law claims pursuant 28 U.S.C. section 1367.

3. The Court has personal jurisdiction over the Plaintiff, who is a resident of Jefferson City, Jefferson County, Tennessee, and Defendant Jefferson County Schools, which is a body politic located in Jefferson County, Tennessee.

4. Venue appropriately lies in this District pursuant to 28 U.S.C. section 1391.

1

5. Ms. Purkey timely filed a charge of discrimination with the Equal Employment Opportunity Commission, received a Right-to-Sue Notice, and timely filed this suit within the prescribed time periods.

**FACTUAL BASIS**

6. Ms. Purkey is fifty-seven years of age and is a covered employee under the ADEA, THRA, FLSA, TPPA, and Tennessee common law.

7. Defendant Jefferson County Schools employs at least twenty employees, is engaged in an industry affecting commerce, is a local governmental entity, and is a covered employer under the ADEA, THRA, FLSA, TPPA, and Tennessee common law.

8. At all times relevant to this action, Defendant Jefferson County Schools employed Dr. Charles Edmonds as its Director of Schools and Ms. Sherry Dotson as its Supervisor of Transportation. At all times relevant to this suit, Ms. Dotson was Ms. Purkey's immediate supervisor, and her actions are those of Defendant pursuant to 29 U.S.C. section 630(b), Tenn. Code Ann. section 4-21-102, and traditional agency principles. As the Director of Schools, Charles Edmonds's actions were also those of Defendant pursuant to 29 U.S.C. section 630(b), Tenn. Code Ann. section 4-21-102, and traditional agency principles.

9. Ms. Purkey began working for Defendant Jefferson County Schools as a bus driver in December 1994.

10. Since that time she has become one of the most experienced and respected bus drivers in the entire fleet, having driven many different routes and having traveled nearly every road in Jefferson County.

11. In her approximately fifteen years driving a school bus, Ms. Purkey missed less than five days of work. And as recently as March 2011, Ms. Purkey received positive evaluations from her supervisor in all categories.

2

Case 3:12-cv-00382-CCS   Document 1   Filed 07/24/12   Page 2 of 10   PageID #: 18

12. Sherry Dotson became Plaintiff's supervisor in approximately August 2010. Almost immediately thereafter, she began making demeaning, disrespectful, and discriminating comments to Ms. Purkey regarding Ms. Purkey's age and small stature.

13. During one such conversation on Sherry Dotson's birthday, Ms. Dotson asked Ms. Purkey if she (Ms. Purkey) had lost weight. Ms. Purkey responded "no" to which Sherry Dotson replied: "Well maybe I'll start to shrivel up too when I get older, and it will look like I lost weight."

14. In late July 2011 Ms. Purkey was told that she would be getting a new bus and a new route for the upcoming school year.

15. After subsequently driving the route, however, Ms. Purkey expressed to Sherry Dotson on August 2, 2011, that the assigned route took one hour forty-five minutes in the morning and two-and-a-half hours in the afternoon to complete. This was not only significantly longer than her previous route with no additional pay, it also violated Tennessee law, Tenn. Code Ann. section 49-6-2105, governing the maximum amount of time students may remain in transit on a school bus and that it violated state law.

16. Ms. Purkey complained that she was not being compensated for the time it took her to complete the route nor for the other tasks drivers were required to perform. She also complained about the excessive amount of time that students were required to be on the bus.

17. Sherry Dotson told Ms. Purkey that Ms. Purkey's pay started when the first child boarded the bus, and it ended when the last child disembarked. She also summarily dismissed Ms. Purkey's complaints that the route violated Tennessee law pertaining to students' maximum transit times on a school bus.

18. Sherry Dotson also commented that she had a "younger girl" she wanted to give Ms. Purkey's job to if Ms. Purkey was not happy with her job. Ms. Purkey expressly stated that

3

she loved her job but simply wanted to be paid for the significant amount of extra time that she was being required to work and wanted to abide by state law for the children's safety and well-being.

19. To discuss the wage issues and to voice her concern over the students' significant transit time, Ms. Purkey contacted the United States Department of Labor on or about August 2, 2011, and spoke with Debra Wynn who informed Ms. Purkey that her compensation was required to start when she boarded the bus and was to stop when she parked the bus.

20. Ms. Purkey told Ms. Dotson about her complaint to the Department of Labor, to which Ms. Dotson replied that she was in charge of the bus drivers and did not care what anyone else said. She said, "I think bus drivers are overpaid as it is." She also refused to alter Ms. Purkey's assigned route to make it legally compliant.

21. During this same time period there was indication from school officials that there was inadequate funding to continue paying the bus drivers for the second semester of the 2011-2012 school year. A meeting was tentatively scheduled for approximately August 16 during which many bus drivers were going to discuss their concerns and develop a unified strategy for presenting those pay cut concerns to Dr. Charles Edmonds. Several drivers approached Mr. Purkey to request that she be the spokesperson for the group in bringing their concerns to Dr. Edmonds.

22. Although Ms. Purkey ultimately decided to decline the drivers' request, Sherry Dotson was told by Diane McCann, a bus driver, that Ms. Purkey would be speaking on the bus drivers' behalf to Dr. Edmonds regarding the payment of drivers' wages.

23. Implicitly threatening their jobs, Sherry Dotson told the drivers that it was in their best interests not to attend the meeting. Fearing retaliation and reprisal, the drivers cancelled the meeting.

24. On or about the same day that the meeting was to occur, Ms. Dotson called Ms. Purkey on the telephone under the guise of chastising her for closing the bus door while a principal, Ms. Forgety, was attempting to speak with her. Ms. Dotson told Ms. Purkey that she should reconsider her employment with Jefferson County Schools and that Ms. Dotson wanted to give the job to "a younger girl who needs the job." Ms. Purkey told Ms. Dotson that she loved her job and had no intentions whatsoever of resigning.

25. Approximately two days later on August 18, 2011, Sherry Dotson and Ms. Forgety boarded Ms. Purkey's bus and notified her that they would be riding the route. Soon after the bus was underway, Ms. Dotson walked to the front of the bus and began turning nobs and flipping switches, complaining that the heater was on. Although Ms. Purkey did not believe that the heater was on, she attempted, while driving, to investigate and remedy Ms. Dotson's complaint that the heater was running.

26. After Ms. Dotson's manipulation of the buttons and switches, Ms. Purkey noticed that the bus's heater was running. Ms. Purkey believed that the new bus must have been experiencing a malfunction that would require a repair the following morning by the bus mechanics. After parking the bus, however, she saw that the thermostat button had been turned over to the heater position, which was a different position than it had been in when she performed her pre-trip inspection. Sherry Dotson had been manipulating the button while attempting to "fix" the purported heat issue.

27. Once Ms. Purkey, Sherry Dotson, and Ms. Forgety reached their destination at the middle school, Ms. Dotson handed Ms. Purkey a route map that she and Ms. Forgety had

drawn during the trip. Ms. Purkey told Ms. Dotson that she did not need the map, as she knew the route very well, yet she still accepted it and placed it in her purse.

28. Based on Sherry Dotson's repeated threats and discriminatory remarks—and finally her actions of turning on the bus's heater and blaming Ms. Purkey—Ms. Purkey filed a discrimination and harassment complaint on August 19, 2011, with Defendant's Human Resource Department.

29. Three days after this complaint and in separate letters of August 22, 2011, Sherry Dotson and Ms. Forgety told Dr. Edmonds that Ms. Purkey had thrown their hand-drawn map in the bus's trash can on August 18. In fact, Sherry Dotson went one step further and asserted that Ms. Purkey "wadded the map up in my face." These allegations were patently false, as Ms. Purkey had the map in her purse.

30. In a subsequent meeting with Dr. Edmonds to discuss Ms. Purkey's complaint of discrimination and harassment and the allegations of Ms. Dotson's and Ms. Forgety's letters, Ms. Purkey showed Dr. Edmonds the map that she allegedly had wadded up and thrown in the trash. In complete contradiction to the accounts of Ms. Dotson and Ms. Forgety, the map was folded neatly and pulled from Ms. Purkey's purse.

31. During the course of pulling the map from her purse, Ms. Purkey laid her bus keys on Dr. Edmonds's desk. Despite her repeated prior assertions that she was not resigning her position, Dr. Edmonds used Ms. Purkey's act of placing the keys on his desk as an excuse to terminate her. He intentionally misrepresented and misinterpreted her actions and stated, "I will accept your verbal resignation." He immediately handed Ms. Purkey a termination paper to sign. Ms. Purkey again stated that she was not resigning and refused to sign it.

32. Sherry Dotson made the comment during this meeting that Ms. Purkey—who was fifty-six years of age—should retire.

33. Ms. Purkey was terminated and her route was subsequently given to a person who is less than forty years of age.

## AGE DISCRIMINATION IN EMPLOYMENT ACT

34. The factual averments of paragraphs 6 through 33 are incorporated into this section by reference.

35. Defendant Jefferson County Schools, through its representatives and agents, willfully and unlawfully discriminated against Plaintiff because of her age in violation of the ADEA, 29 U.S.C. section 623. Ms. Purkey was at all times over forty years of age, was terminated from her employment because of her age, and was replaced by someone under the age of forty.

## TENNESSEE HUMAN RIGHTS ACT

36. The factual averments of paragraphs 6 through 35 are incorporated into this section by reference.

37. Defendant Jefferson County Schools, through its representatives and agents, willfully and unlawfully discriminated against Plaintiff because of her age in violation of the THRA, Tenn. Code Ann. section 4-21-102, with regard to her compensation, terms, conditions, and privileges of employment. Ms. Purkey was at all times over forty years of age, was terminated from her employment because of her age, and was replaced by someone under the age of forty.

## FAIR LABOR STANDARDS ACT

38. The factual averments of paragraphs 6 through 37 are incorporated into this section by reference.

39. Defendant Jefferson County Schools, through its representatives and agents, retaliated against Ms. Purkey for complaining both internally and to the Department of Labor

about the amount of hours for which she was not being compensated, in violation of the FLSA, 29 U.S.C. section 215(a)(3). Ms. Purkey's complaints were protected activities under the FLSA, were known by Defendant, and were the cause of her subsequent harassment, discrimination, and termination by Defendant.

## TENNESSEE PUBLIC PROTECTION ACT

40. The factual averments of paragraphs 6 through 39 are incorporated into this section by reference.

41. Defendant Jefferson County Schools, through its representatives and agents, discriminated and retaliated against Ms. Purkey because of her refusal to participate in and remain silent about illegal activities – i.e. children riding the school bus far in excess of the time allowed by Tennessee law, which was a law enacted for the health and welfare of the state's school children. Ms. Purkey complained internally and, believing it had authority to act, to the U.S. Department of Labor.

42. Ms. Purkey was terminated for the sole reason of her refusal to participate in or remain silent about illegal activities.

## RETALIATORY DISCHARGE

43. The factual averments of paragraphs 6 through 42 are incorporated into this section by reference.

44. Ms. Purkey was an employee-at-will of Defendant, but she was fired for complaining about practices that violated state law and threatened the safety of the school children, for contacting the U.S. Department of Labor about wage issues and safety violations, and/or for her (perceived) involvement in presenting to Dr. Edmonds the bus drivers' grievances about wages and employment conditions. Ms. Purkey had constitutional, statutory,

8

Case 3:12-cv-00382-CCS   Document 1   Filed 07/24/12   Page 8 of 10   PageID #: 24

and/or public policy rights to engage in such activities, yet her exercise of these rights was a sole or substantial factor in Defendant's decision to unjustly fire her.

### DAMAGES

45. As a direct and proximate result of Defendant's reckless, willful, discriminatory and retaliatory behavior, Ms. Purkey has suffered lost wages, loss of benefits, loss of business opportunity, loss of earning capacity, humiliation, embarrassment, emotional distress, pain and suffering, loss of personal reputation, as well as other benefits and privileges of employment.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Shelia Purkey respectfully prays for the following relief:

46. A declaratory judgment that Defendant has violated the ADEA, THRA, FLSA, and TPPA;

47. That such violations were willful, intentional, and done in reckless disregard of Ms. Purkey's rights;

48. That Plaintiff be allowed to plead in the alternative regarding one or more of her causes of action;

49. A jury be empaneled to serve as the trier of fact;

50. An award of damages in the amount of front pay, back pay, liquidated damages, compensatory damages, punitive damages, and pre- and post-judgment interest pursuant to, among other authorities, 29 U.S.C. sections 626 and 216 and Tenn. Code Ann. section 4-21-306, to be proved more specifically at trial;

51. An award of reasonable attorney fees and costs pursuant to, among other authorities, 29 U.S.C. sections 626 and 216 and Tenn. Code Ann. sections 4-21-306 and 50-1-304; and

52. An award of such other and further legal and equitable relief to which Ms. Purkey may be entitled under the facts of this case.

RESPECTFULLY SUBMITTED,

  *s/ Jesse D. Nelson*
JESSE D. NELSON (BPR # 025602)
LAW OFFICE OF JESSE D. NELSON, PLLC
*Attorney for Plaintiff*
P.O. Box 22685
Knoxville, TN 37933
(865) 383-1053
*jesse@jessenelsonlaw.com*